Pee Curiam.
 

 An action on the case was instituted in May, 1808, by Ingram against the administrator of Thomas Bedford, deceased. There are eight counts in the declaration.
 

 * 1, On an agreement in May, 1791, to build a dwelling-house according to a plan exhibited, and
 
 assumpsit
 
 to pay therefor §398.47, in tobacco, at §3.08^ per hundred, and for additional work in proportion, and avers that he built the dwelling-house, and performed additional work to the amount of §600.
 

 2.
 
 In simul computassit,
 
 in October, 1797, for divers sums of money due, &c., §1,169.96, to be paid in tobacco at the same rate.
 

 3. For work and labor done and performed about certain buildings at his special instance, and for materials procured, he assumed to pay §800.
 

 4.
 
 Quantum
 
 meruit, for work and labor done and materials furnished, value §800.
 

 5. For money laid out and expended, §800.
 

 6. For goods, wares, and merchandise sold and delivered, and diet and lodging furnished, §800.
 

 7.
 
 Quantum meruit,
 
 for the same, §800.
 

 These seven counts are an
 
 assumpsit
 
 by the intestate.
 

 
 *637
 
 8. That the plaintiff and defendant, on the 12th of September, 1807, after the death of Thomas Bedford, accounted together concerning divers sums of money due and owing to the plaintiff by said Thomas Bedford in his lifetime, and on the account stated, the defendant, as administrator, was found in arrears to said Ingram $1,100, and being so indebted, he promised to pay.
 

 To this declaration the defendant pleaded: —
 

 1. To the first seven counts, that the intestate did not assume, and issues were joined.
 

 2. That he administered in October, 1804, and within two months thereafter gave due notice according to law for all persons to bring forward their accounts and demands against the estate, and that the plaintiff (who was then a citizen of Virginia) did not within three years next after his qualification as administrator make demand and bring suit against the * defendant for the recovery of the money mentioned in the first seven counts, or either of them, and prays judgment, &c. Replication, that the defendant did not in two months after qualification advertise at the court-house of the county, and of the district, &c. Demurrer and joinder.
 

 3. Fully administered, and no assets. Replication and issue.
 

 This plea was afterwards withdrawn.
 

 4. That the cause of action in the first count did not accrue within three years before said replication and issue.
 

 5.
 
 Non-assumpsit
 
 by Thomas Bedford to the 2d, 3d, 4th, 5th, 6th, and 7th counts, within three years. Replication and issue.
 

 6.
 
 Non-assumpsit
 
 to the 8th count and issue.
 

 7. A former judgment for the same cause of action and satisfaction thereof.
 

 Replication, that it was not for the same cause, and issue. At March term, 1812, the plaintiff suffered a nonsuit, which was set aside. At December term, 1812, he had a general verdict for $2,192, which was set aside, and a new trial granted.
 

 At May term, 1815, there was a nonsuit, which was set aside, and in May, 1816, a verdict for the plaintiff, $2,308, which was again set aside and a new trial granted.
 

 In November, 1816, the cause was again tried; two bills of exception were filed, one because the ■ court admitted the deposition of Charles Cabiness to be read in evidence.
 

 
 *638
 
 The other to the admission of the testimony of Edmund Cooper.
 

 In the progress of the cause, the defendant’s counsel demurred to the evidence (which demurrer contains the whole of the evidence given on the part of the plaintiff), and offered to admit of record that the whole of the evidence, together with every legal and just inference * thereupon, were facts in this cause, and thereupon prayed the court to allow the demurrer, and direct the adverse party to join therein ; which the court refused, unless the demurrant would expresslyadmit of record that an account had been stated between the parties. To this opinion of the court the defendant also excepted.
 

 The jury found that Thomas Bedford did assume as the plaintiff hath alleged in the first seven counts in the declaration. They also find that the cause of action in those counts did not accrue within three years, nor did Thomas Bedford assume within three years next before suing out the
 
 writ;
 
 that the recovery against Thomas Bedford in his lifetime was not for the same cause of acr tion, and further say, that the defendant did assume as the plaintiff hath alleged in the eighth count, and assess damages for the nonperformance of the assumption to $2,340.50.
 

 Judgment was rendered for this sum, to be levied of the goods and chattels of the intestate in the hands of the administrator to be administered.
 

 The errors assigned are, that the court erred, —
 

 1. In admitting the deposition of Charles Cabiness to be read in evidence.
 

 • 2. In not rejecting the testimony of Edmund Cooper.
 

 3. In giving judgment on the verdict of the jury, before a decision on the demurrer.
 

 4. In refusing to compel the defendant to join in the demurrer to evidence.
 

 As to seven counts of the declaration, the defendant below pleaded the act of limitations of 1789, ch. 23, in favor of executors and administrators. The plaintiff replied, the defendant demurred to the replication, and the plaintiff joined in demurrer, and upon the trial there was a verdict for the defendant, on these counts. Should the demurrer be now argued and decided for the defendant, he could have no more than he already * has, a discharge from these seven counts. The Circuit Court
 
 *639
 
 very probably was influenced by this consideration in giving judgment on the verdict on the eighth count. This objection affects not the merits of the cause, without which we cannot reverse judgment by 1809, ch. 120, § 10. Suppose the court should set aside the judgment, because given before the demurrer was disposed of, it will not be a reversal of the whole proceedings, but only as far back as the point where the error commenced. This court must give the same judgment as the Circuit Court ought to have given. The court should have disposed of the. demurrer, and then have given judgment on the verdict. If we reverse the judgment now, and give directions that they shall dispose of the demurrer, and then proceed to judgment on the verdict, what alteration will there be produced in favor of the defendant ? Not the least; for, even if the judgment on the demurrer free him that his plea is good as to the first seven counts, still he can have no other judgment as to them than he now has. To reverse them now, to give him a chance of obtaining a judgment in his favor on that demurrer, will be only to give him an opportunity to obtain that which he already has, a discharge from these counts. If the Circuit Court has committed an error in giving judgment before disposing of the demurrer formally, it is a very immaterial one, doing no harm to the defendant below, nor having the least operation upon the merits of the cause.
 

 As to Cooper’s testimony, will it be of any use to discuss the admissibility thereof? The exception contained in the bill of exceptions is probably overruled by the demurrer to evidence, which admits the truth of this testimony with all the other testimony set forth in the demurrer; which admission of the truth must be subsequent to the time of its reception. Can that be relied on as true which is not admissible, for fear it may not be true ? In all legal proceedings, if you make * a stand at one point, and afterwards retreat to another, the former is wholly relinquished. It is for the avoidance of going forward and backward, and to keep the cause in progression, that the parties must advance continually and not retreat. For this reason I apprehend it is, that after a bill of exceptions, the exceptant cannot move for a new trial. 1 W. Black. Reports, 929. If you bring error, you cannot after-wards move to set aside the judgment for irregularity, for error brought admits the existence of the judgment, and that it is only
 
 *640
 
 reversible for error, and not void for irregularity. For the same reason, after moving an arrest of judgment, you' cannot move for a new trial. Moving an arrest admits that you are satisfied with the correctness of the verdict. 2 Salk. 647; B. N. P. 325. Suppose we gave judgment on a demurrer joined in favor of the plaintiff at law, and at the same time, as to part of the evidence, that it was not admissible: is not here two contrary decisions, one going upon the admissibility and truth of all the testimony, the other upon the inadmissibility of part; one resulting in an affirmation of the judgment, the other in the reversal ? This is so unsystematical and anomalous that it cannot be correct. The bill of exceptions must be abandoned when the demurrer to evidence is filed. How can you call upon the court to decide upon the admitting facts, and at the same time say the fact is not admitted, as most certainly it is not, if you insist that the evidence it is founded upon is not competent to be received for any purpose ? This is certainly so where the demurrer is joined ; but where not joined, it is, perhaps, as if never offered. All stands upon the exceptions and verdict, and that leads to the merits of the exception, which shall be considered hereafter.
 

 As to the demurrer to evidence, where either party, for instance the defendant below, cannot prevail by showing the testimony inadmissible to have it rejected, * but says that the evidence itself, though competent to be received, and though it maintain the fact which it is offered t& prove, does not still in law maintain the case of the plaintiff, but is afraid the jury will misapply the law if they determine both the law and fact, and at the same time fears that they will not give a special verdict, leaving the law for the court to apply; then, by demurrer to evidence, he may cause the fact to appear as satisfactorily as if stated in a special verdict. If, therefore, the evidence demurred to be parol and circumstantial, upon which the jury may infer the fact it is offered to establish, then the demurrant must admit the fact in the same way as a special verdict would state it. Upon a special verdict the court cannot make any inference from evidence, however plain and irresistible that inference may be. So, likewise, the court cannot do so upon evidence stated in- a demurrer. It will not do for the demurrant to say, I agree the court may infer all that the jury legally might, for the judges cannot respond to a question
 
 *641
 
 of fact. Suppose, in a special verdict in trover, the evidence be stated, and that shows clearly a demand and refusal, whence the jury might and ought to have inferred a conversion; yet the court cannot give judgment, because they cannot make the inference, and say there was a conversion. The demurrer to evidence being in place of a special verdict, must have the same certainty in all respects, and not leave .it to the court to make inferences, which they have no more right to do in this case than in that of the special verdict, which in short they have no right to do in any case. If an inference be once made by the court, from evidence stated, it will soon be stated in numerous cases, and the conclusion be left to the court, which will thereby become clothed with the powers of a jury as well as their own, and will become both judges and jurors. The trial by jury will be gradually laid aside ; than which no idea can be more abhorrent to my mind. The judges in drawing conclusions * sometimes will go as far as a jury would, at other times fall far
 
 short;
 
 and the result of all their conclusions, in almost every case, be more or less different from what would be the verdict of a jury. Is not here the creation of a tribunal deciding upon facts that will gradually supplant the jury trial ? Is not here a jury superseded, and its province usurped ? This can only be avoided by requiring the demurrant to admit the facts, the same that a jury might find, and then the court will have nothing to do but to apply the law. And if these facts shall not be admitted, then let a jury find a special verdict, or, if they will not do so, and find against law, let their verdict be set aside. Thus will ancient boundaries be preserved, and the wisdom of our ancestors be' not disregarded. As in the present instance, the de-murrant did not offer to admit any fact whatever, but only to leave it to the court to make inferences, therefore the plaintiff below ought not to have been compelled to join in the demurrer.
 

 Whether the evidence offered be conducive to the fact, in other words, whether it be competent to be received towards the establishment of the fact, the judge determines; and his sentence is appealed from by a bill of exceptions. But if the evidence be received, then how far it conduces to the proof is for the jury to determine ; and he that demurs must admit the fact it conduces to prove, and which a jury might infer from it; otherwise, you take from the party producing the evidence the benefit.'of the conclusion
 
 *642
 
 which the jury might make in his favor, if the cause were not taken from them.
 

 Then let it be inquired, does the evidence stated in the demurrer conduce to the establishment of the fact of an
 
 insimul computassit,
 
 and promise on the part of the administrator ? If he promise payment, or admit the debt, from whence a promise is inferred, the action must be against himself personally, and for satisfaction
 
 de bonis propriis.
 
 And the promise * must be supported by a sufficient consideration, as having assets and forbearance and the like. If you sue upon the
 
 assumpsit
 
 of the intestate, and prove a promise by the administrator after the death of the intestate, that is irrelevant testimony which does not support the declaration. The right way in such a case is to declare on an
 
 insimul computassit,
 
 which does not subject the administrator personally, being only an ascertainment of a preexisting demand due from the intestate, and to be satisfied out of his assets. If you sue the administrator .and he plead the act of limitations, .you cannot reply, he, the administrator, promised in three years, for that is a departure from the declaration, which is founded upon a promise of the intestate. 2 Haywood, 282, 283, where are cited, 4 Term, 347; H. Bl. Report, 104, 108, 110. Therefore you must sue the administrator himself upon his own promise, and must allege an
 
 insimul computassit
 
 and promise thereon, in order to recover against the assets of the intestate, and not charge the administrator
 
 de bonis propriis.
 
 The law from an acknowledgment cannot imply a promise, having the latter effect, but will imply an
 
 insimul computassit
 
 and promise, therefore affecting only the assets of the deceased. 1 H. Bl. Reports, 104, 105. To prove, therefore, an admission of the demand, is to offer evidence of a- circumstance from which the j ury may legally infer the
 
 insimul computassit
 
 and promise ; and, therefore, ought distinctly and unequivocally to admit in his demurrer to such circumstantial evidence, that the defendant did account with the plaintiff, and promise to pay as stated in the declaration, or ought to withdraw his demurrer, and leave it to a jury to say whether the facts were so or not. The Circuit Court did not err in refusing to compel the plaintiff below to join, and in leaving to the jury to decide upon the evidence. We concur with the doctrine laid down in 2 H. Bl. Reports, 187.
 

 * As to Cooper’s testimony, upon what ground can it
 
 *643
 
 be rejected? Not on the ground of its having been a confidential communication, for that is every day extorted from the con fidant, except in the case of counsel, solicitor, and attorney, and is confined to these only, it being in the contemplation of law of more importance to do justice than to observe the rule of social convenience, which obliges to secrecy. Such evidence may be extorted from the party himself, by bill in equity. He suffers no wrong if another be compelled to disclose what he himself would be obliged to disclose. Can it be urged that the defendant below spoke to Cooper, upon the supposition that, being incapacitated to be a witness, he would not be allowed to give evidence of the conversation on the trial ? One of several defendants discharged from the action by judgment of the court, may be a witness. Peake’s Evidence, 29. Why should the witness be repelled here more than in that case ? Can it be rejected on the ground that it was an offer with a view to compromise ? Both Cooper and Bedford disavowed a compromise, and the admission was not made until Bedford was informed that Cooper was a surety for costs, and could not be a witness. We take it that this was the reason why Bedford conversed with him at all. It was not an offer to purchase peace, nor a concession, nor proposition made for that purpose, but an admission of what the speaker conceived to be true in relation to the plaintiff’s demand.
 

 With respect to Cabiness’ deposition, the writing by a disinterested person, selected by the takers of the deposition to write for them in their presence and under their direction, is as well as if one of themselves had written it. And it cannot be that Bedford had not notice of taking the deposition, for his brother was sent by him for that purpose, and was present when it was taken.
 

 Judgment of the Circuit Court affirmed.
 

 See King’s Digest, 449, 5921, 5929, 9434, 11,070, 11,390.